Good morning, your honors. Carl Gunn with the Federal Public Center in Los Angeles. I represent Mr. Padilla. I'm going to try to reserve five minutes for rebuttal and I'll try to keep track of my time. I don't want to downplay any of the issues. I certainly want to stand by all of them, but I thought I'd begin with the Miranda issue, frankly, partly because it's a little less complicated and I did want to touch on it. I think you can start with just looking at what the agent said. This is your last chance to cooperate. Why is he saying that? What is he trying to do? I think it's beyond doubt that he is trying to get a response. The statement on his face invites a response. The statement invites a response right then. Last chance to cooperate. It actually contrasts. I don't know that much about the prior case that was being argued, but it sounds like it may contrast with what was said there after this is all over. So I think just looking at those words, it's clear that some response is being invited and it's being invited right then. The government's response seems to be, well, the agent wasn't trying to or didn't know he'd get something that was incriminating. Well, Your Honor, I think that misunderstands the test that applies to what constitutes interrogation. The test is whether the officer, quote, should have known, unquote, that his comments were, quote, reasonably likely, unquote, to elicit an incriminating response. Not that he knew or was trying to even, though I think he was certainly trying to elicit something here, but he, quote, should have known, unquote. Not for sure that it was going to elicit an incriminating response, but whether it was reasonably likely to elicit an incriminating response. An incriminating response does not mean something that's on its face inculpatory. It means anything the prosecution might choose to use against the defendant. Judge Canby, I think, sort of made that point in the last case. And if you apply that test to what happened and what was said here, this qualifies. And I think it qualifies pretty easily. First, just look at the response the agent was affirmatively trying to get. He was trying to get information that would clearly establish that our client knew another important gang member. That, it seems to me, is going to be some circumstantial evidence that our client was a gang member. Probably some circumstantial evidence that he was an important gang member. And this is illustrated by the third issue we're arguing about in our brief. The government thought that was important evidence, and the government was going to use that evidence to help convict our client. Beyond that, though, Your Honors, if you go to the reasonably likely standard that applies here, I think it is definitely reasonably likely that something like that said to a young man like our client would elicit something similar to what was, in fact, elicited. What was the actual statement made? By the agent? Yeah. It's not quoted in his declaration, but the words he uses in his declaration are, I informed Padilla that this was his last chance to cooperate. Now, before that, what did he talk about? What did he want? It was referencing a prior interview, I think about a month earlier, at the state prison. And this is in the excerpt, I believe, on page 4, or maybe 5, but 4 or 5. It was referencing a prior conversation where he'd gone to the prison saying to Mr. Padilla, we'd like to locate this other gang member who's a fugitive named Joe Sands. Did he say this other gang member or just the name of the person? I checked the excerpt, Your Honor. I believe both of them knew and the understanding was that he was a fellow gang member. But this was someone that was known to Padilla. As a matter of fact, he'd used the name himself before. Correct. So it was someone he knew, and they were asking for a location of this individual. Correct, which would imply that he knew the individual reasonably well, it seems to me. At least that could be the inference that the government could argue. So is it clear that when he said this is your last chance to cooperate, he was referring to give me the location of so-and-so? Probably. He didn't expressly state that, at least according to his declaration. But it's probably reasonable to interpret it that way. Now, your argument is that if he says 35th and Sepulveda, that will be incriminating to him? That's part of my argument. My argument is that first, at the very least, that's at least somewhat incriminating, at least in the sense of it's the kind of thing the government ended up using at trial and could use at trial to show his connection with a gang, because that was part of its big argument. That he knows where this person is means he's part of that gang. I think the government could use it to argue that. It could use it to support that argument, and that he's an important gang member, which of course was part and parcel of their argument about why Mr. Villa would take responsibility for the gun instead of Mr. Padilla having to take responsibility. But I don't think the court really needs to reach that question, because I would submit that when you go to the reasonably likely standard, it is entirely plausible and believable and reasonably likely that especially a young man who's been bad-mouthing the police, as the agent's declaration said he had been doing in the first interview, is going to respond either with some sort of give-up statement like, okay, you got me, I'll cooperate. Or more likely, something like he responded to, I'm not worried, I've got a defense, I have someone who's going to say whatever. Assuming this is a fairly close question, it might turn on standard of review. Our cases are not particularly helpful as to what the standard of review will be for this determination by the district court. What's your view? I think if you parse the cases out, Your Honor, they do draw a line, and they suggest de novo review here. What the cases seem to say, and this makes sense actually, is where the facts are undisputed. And I would submit especially where there's not any live testimony, where there's any demeanor to evaluate, that then you apply de novo review. I think the cases actually, if you break them out, pretty clearly draw that line. And I think it makes sense. If you have undisputed facts, not even including a witness's demeanor to which you're applying the law, there's really no reason why this court can't do it as well as a district court. And it's an important constitutional right, which gives some more of a leaning towards de novo review. Assuming we agree with you, why isn't any error harmless in this case? Oh, well. You keep using the phrase, part of their evidence. And so you have to concede that the record as a whole contained other evidence. Oh, yeah. But the test, of course, Your Honor, is whether it's harmless beyond a reasonable doubt. I think it clearly is harmful. I mean, what you have is you basically have, the evidence consists of associates or friends and other gang members, whatever you may call it, word against the word of the police. And you don't even have to say the police are lying. You can just say the police are mistaken and didn't see what they think they saw. So it's just one person's word against the other. I mean, to say that's harmless beyond a reasonable doubt, I think you'd almost have to say there's no way a jury could believe a gang member against the police. And I'd hate to come to that result. The only other thing they have, besides these inconsistent statements, which are actually, unfortunately, pretty damning. First he says he's going to do one defense, then he says he's going to do another defense. That looks pretty bad. The only thing you have in addition to that besides one person's word against the cops, the police, I'm sorry, is that you have these letters. But if you look at those letters, they don't necessarily say, say this for me because it's a lie. They could just as easily be, say this for me because it's the truth. I don't know if the court may recall there's the three letters that the government had that were sent by Mr. P and Mr. Villa. If you look at those letters, they could be, tell this false story for me, but they could also be, tell this true story for me. So I think it really is pretty damning as to why you accept the police's words over the gang members' words, unless it's just a bias against gang members and for police. It's really pretty damning that you have these directly contradictory statements. Okay, I think we have your Moran argument in hand. What else do you want to chat with us about this morning? All right. I did want to go on. The next argument I was going to touch on was the argument about the prior conviction. The government says, well, this is abrogating Lewis. It's not about abrogating Lewis, Your Honor. It's about how far Lewis goes. Even before the 1986 amendment that I rely on to this statutory language, this circuit had left it as an open question about whether jurisdictional defects were different. And we could go back and forth with the arguments in the briefs due to some extent about whether this is, quote, jurisdictional, unquote, and whether it's more important or less important than denial of the right to counsel. But with the 1986 amendments, I don't think Your Honors need to reach that question. The issue is how the jurisdiction where the conviction took place, i.e., California, views whether this was a conviction. Now, your argument here is not that the Superior Court of the State of California didn't have jurisdiction, but this particular department was the wrong department to try him in. Well, actually, I call it – I would call it jurisdiction, and there's California courts' cases that call it jurisdiction. But I don't think you need to reach a – I think the even stronger point of my argument, Your Honor, is that that plus you have a non-proton order here. Yeah. But I've had difficulty with the idea there's no jurisdiction because clearly the Superior Court had jurisdiction. They were just in a different department, that seems to me, the juvenile department instead of the criminal department. Well, a division. I think it's more important – I think the juvenile versus adult distinction is more important than superior court versus another court. I think that's right. There is a California Supreme Court case, Your Honor, that uses the word jurisdiction. Yeah. It's the Chi Kuo Wong case that I cite, and it says, Juvenile courts exercise exclusive initial jurisdiction over all youths under 18 years of age, and until that court makes a certification order, the superior court lacks jurisdiction to make any order. Now, I don't think you need to reach that question, Your Honors, because I think you just have to apply the statutory language as adopted in the 1986 amendments. Lewis itself, remember, is just a case interpreting the language of the statute. If you look at the quote in the government's brief on page 26, it's Lewis talking about the, quote, sweeping, unquote, statutory language, and the, quote, plain meaning, unquote, of that language. Well, now after 1986, there's additional sweeping language. It says, What constitutes a conviction shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Congress, for better or worse, decided it was going to let state law determine what constitutes a conviction. It wanted to give respect to state law, at least in that respect. Here the state is California, and California law says two things about this conviction. First, under California law, as applied by the state court in the ruling on Mr. Padilla's writ of quorum nobis, the conviction has to be vacated nunc pro tonc, or is vacated nunc pro tonc, back to 1997. That's the first thing California law says. The second thing California law says, in general, is that nunc pro tonc means the conviction was vacated and didn't exist as of the nunc pro tonc date. Now that does not abrogate Lewis's holding, Lewis's basic holding, which is that what matters is whether, the holding of Lewis is that what really matters is whether a conviction exists at the time of the possession of the firearm. That's the holding of Lewis. All this does is give effect to and implement the 1986 statutory language in another respect. It just says state law determines whether the conviction exists at that time. And that's just another implementation of the statutory language that says what constitutes a conviction depends on the law of the jurisdiction in which the conviction was sustained. So really this is just taking Lewis, which says you look at the language of the statute, and taking Lewis, which says what matters is whether the conviction exists at the time of the possession of the firearm, and then looking at the state law to see whether the conviction existed at the time of the firearm. And for better or worse, the state law says no. Well, the argument would be under Lewis, I mean analogized to Lewis, is that expungement is quite analogous to this. In other words, if a state says if it's expunged, it really didn't ever exist. And some states would take that. Yes, on the state law, that expungement. And under Lewis seems to say no, that doesn't matter. We don't care what the collateral attack is. If it's not made before the conviction, it doesn't count. I understand your argument, but how do you respond to Lewis in that respect? Well, Lewis, of course, wasn't dealing with an expungement. And Lewis wasn't dealing with something that was vacated pro ton. And Lewis didn't, as this Court recognized in the Strong case, didn't address the jurisdiction. I guess I think the answer is Lewis doesn't address that. The holding of Lewis is that what matters is whether the conviction existed at the time of the possession of a firearm, not whether it could be vacated later. Because in Lewis, of course, it hadn't even been vacated. Lewis does not address the question of, certainly doesn't address the question of what the 1986 amendment suggests, because they didn't exist at the time of Lewis. And it doesn't address the question of what it means for a conviction to exist. And I don't know if he uses that word, but what it means for the conviction to exist at the time of the possession of a firearm. And I don't think you need to reach the question of what Lewis meant there, because the 1986 amendments address that question regardless of what Lewis had meant. Lewis is not some sort of constitutional rule that could override a statute. Your adversary takes a position in his brief that under our law, Ninth Circuit law, there will be, if the setting aside occurs before he has the gun, he's all right. But if it's after, then the gun count goes. What do we do with those cases? None of those cases involve, none of those cases involve, the only case that involves a nut-pro-tunk vacating, and I think that's critical to my argument, is the nut-pro-tunk nature of the order. None of those cases had a nut-pro-tunk order, except McCroskey, which was a pre-1986 amendment case. And McCroskey involved an expungement, not a jurisdictional defect. And I think the fact of a jurisdictional defect as something, the Strong case suggests that. The other two Ninth Circuit cases, I think there's two other Ninth Circuit cases the government cites, Varela and Johnson. And both of those cases, Your Honor, involved an expungement or restoration of rights that didn't fully restore the right to possess firearms. And that's a caveat in the language from the new 1986 language, is it has, you don't get the benefit of that for possessing firearms. So, in your view, there is a distinction between expungement and the nut-pro-tunk order? No, in my view, there's a distinction between expungement and a jurisdictional defect. And in McCroskey, you had expungement and a nut-pro-tunk order. Here I have a nut-pro-tunk order and jurisdictional defect. And maybe those two together are different than just expungement. But I don't think you need to reach that, Your Honor, because the language, the statutory language on which I'm relying, the 1986 amendment, McCroskey was decided before that. So McCroskey would have had no occasion to address my argument. One thing Lewis is perhaps getting at is that the rule is designed to affect behavior. And it makes sense to say if you have a conviction hanging over you, no matter what happens to it later, you ought not to buy or possess firearms. And doesn't your argument undercut that? I mean, it means that some people can go around and figure, well, we can maybe do it, because I've got an attack coming. It seems to me you have a nice sensible result in Lewis. I don't know if people are going to think that way because it's pretty risky. I don't either. The attack doesn't work. But I guess the answer is it depends. Lewis, I don't think, really does depend on that. What Lewis does is it looks at the statutory language and it explains that that's one rationale for the statutory language. We now have additional statutory language from 1986. You have your amendment. Maybe what Congress decided, and they probably didn't think so, but what Congress, we know, decided was they didn't want the federal statute to be overriding what state law said about a conviction or a record. For example, if you had something happen in state court that was some sort of suspension of judgment or something, and under state law that wasn't a conviction, what the 1986 amendments say is we want to recognize and acknowledge that. Even though under federal law that would count as a conviction. And for better or worse, I think. One reserve. I think on the – I will, Your Honor. Just on the gang expert testimony, I didn't want to leave that alone, but I think that's pretty well highlighted by the quotes in the brief. You have a quote of the district court's ruling, a quote of defense counsel's objection, and quotes of how the evidence got used. All right. Thank you. Thank you. May it please the Court. William Botger for the United States. Good morning, Your Honor. Let me – we're trying to decide where to begin. There are numerous starting places, but I think going with the last argument on the new trial motion first, there are five criteria that must be satisfied in order to qualify for a new trial and the judge at the trial level must have abused her discretion. Although she said it wasn't necessary to make a finding on these, she made it very clear that she did not believe on the record that there was due diligence or that there was newly discovered evidence. And, in fact, in the reply brief, the defendant appellant effectively concedes. Both of those points. They concede that there was no due diligence by arguing that it wasn't – it isn't applicable in these circumstances. The fact that the defendant knew he was a minor at the time he was convicted was somehow comes out of – and that he took no action to vacate that conviction at any point until after he had been tried and convicted in this case is irrelevant to due diligence and it's not applicable. And then secondly, they concede that the, quote, evidence is not newly discovered. Their argument is that it didn't exist, but I would argue that the evidence, the knowledge that the defendant had to act upon, is his knowledge that he was a minor at the time he was convicted of a crime or at least he had – at the time he had committed the crime of which he was convicted in superior criminal court. But the district court didn't rely on due diligence. It did not. It said that it indicated, I guess one would say, extreme skepticism. Yeah, but that's not a holding. I assume that if that becomes relevant, we'd have to send it back. That is a factual determination. Yes, Your Honor. It does have facts in it, at least. The third basic leg of the argument upon which – and the primary one upon which the defendant is relying on a new trial motion is the argument that it probably had this order, the non-pro-tunc order been submitted at trial, even though it didn't exist at the time of trial, that it probably would have resulted in an acquittal. And the counsel's argument essentially relies upon the 1986 amendments, although I recall the reply brief in the brief. They sort of say, well, that doesn't really count. The point of fact, the Lewis decision, which I believe was in 1980, established a very fundamental proposition, which has not been changed between then and now, and that is that the expungement, vacation, set aside, whatever pardon, whatever verb you intend to apply to the change in the individual's record by a state, operates only prospectively. And the reason for that, that the Congress has decided that it is in the interest of the United States and its citizens that certain classes of individuals not be permitted to hold firearms. There are a number of such classes defined in the statute. I understand your argument on that, but what do you make of the 1986 amendments to that? Your Honor, I don't think that – well, first of all – I mean, it seems to me that the – there may be a difference between a pardon and an expungement in this case because if you're saying, if you accept their argument, if this – if the conviction was void ab initio, it never existed, then it's – isn't that a different circumstance under the 1986 amendments? Each circuit court of appeals that has addressed that question, with the exception of the Pettiford case, which is distinguished as a sentencing case, not a case involving actual conviction, has held that, no, there is no change in this issue by virtue of the 1986 amendments. The 1986 amendment reads, and there's a pertinent portion of it, it's quoted in our brief at page 29, any conviction which has been expunged past tense or set aside of which a person has been pardoned or has had civil rights restored shall not be considered a conviction for this purpose, and so forth and so on. All right. Now, taking – accepting that argument, what do you make about the – what do you make of the jurisdictional argument? Why do you – why isn't that different in your view? Because, very simply put – Why is it different? Excuse me. No, I'm sorry. Very simply put, Your Honor, none – there is no California case authority suggesting that there was a jurisdictional problem here. The two cases we cited, the Lusovich and the Enn cases, both make it very clear that particularly in the case where the individual waives the right to appear by not disclosing the fact that they're a juvenile in juvenile court, waives the right in superior court by not disclosing to the judge that they're there under a false name with a false date of birth. I mean, the logic here, and it's really not in the record, is had his – had this individual been identified by that court given his juvenile record, the probability, and one can infer this from why he explains he didn't disclose to the court, is that he would have gotten a much more severe sentence, which would have probably included custody time in CYA, California Youth Authority. So he chose to mislead the court to get a light sentence. Regardless, jurisdiction is jurisdiction if this is a jurisdictional issue. Well, the case law does not – let me find my notes here because there are so many cases. Every one of these cases holds that it is not a jurisdictional effect. Luzovic specifically holds that. The Lavendera case, the 1951 decision, indicates that a – states that a defendant convicted in criminal court who is under the age of 18 at the time of the offense does not render the conviction unlawful. The Chico Wong case, which was a collateral attack on the determination of fitness, not a question really of jurisdiction, said that the defendant failed to avail himself of timely review, waives the right to challenge the certification to an adult court. The Rucker case also cited in the papers, right to trial in the juvenile court is waivable. Juvenile and criminal courts have concurrent jurisdiction when the crime is committed between the ages of 16 and 18. That's a 1978 decision. 1999, germane, not a question of subject matter jurisdiction, and it's waived if there is not a timely objection. Now, before you go on with that line, though, what we have in this case is something different. We have an actual finding in this case by a state court that there was no jurisdiction and it was the conviction was void ab initio. What do you make of that? I mean, it's entitled to full faith and credit, of course. In the first instance, Your Honor, the basis for the finding I think is relatively difficult to determine based upon the words used, which are very few. Secondly, the case law, and you can start with McCroskey, and if you accept the proposition that Lewis was not modified, the basic proposition was not modified by the 1986 amendments, then McCroskey is good law because in that case, the Ninth Circuit Court of Appeals said a nunk-pro-tunk order is no different from any other, and if you got the gun before that order is put into place, too bad. You go to jail, and that's what the rule is here. The Mayfield case, which is relied upon by the appellant in their papers, presented a case of void ab initio. It's another Latin phrase, but it basically means the same thing. It's void from the beginning. From the beginning is the time of the conviction. So you go all the way back to the time of conviction, and that court order, which was apparently based upon a perception by the district court that there was no jurisdiction in the adult court, was found to be not a distinction from the basic proposition that if you're going to get it vacated, whatever Latin phrase you may attach to it, if the original conviction is going to be ordered to go away and you have the gun before that order is entered, too bad. You're on notice. You can't possess it. Just like if you've got a temporary restraining order issued against you for domestic violence. Your wife has gone in hypothetically and lied about what you've done. You had notice of it. You satisfied the requirements of the statute. And then you go out and buy a gun, and two weeks later you hire a lawyer. The lawyer goes in and has the TRO vacated on the grounds there's no substantive evidence to support it. If you bought that gun and were found in possession of the gun, in that two-week window, you violated the statute, and you're supposed to go to jail. I understand that argument. It's slightly different if it's saying void ab initio. But I understand your position on that. Do you want to talk about Miranda? I beg your pardon? Do you want to talk about the Miranda issue before, unless there are further questions on it? Yes, sure. Do you have a question? If I can find my... Essentially, the argument... I didn't mean to interrupt your flow, but I wanted to make sure you got to the issue. I appreciate it. Thank you. Basically, the argument here is that the officer should have known. Well, let me start with the standard of review question. The case law is confused. And in the Hanley case, they even say we're not sure what it is. I believe that the finding of custodial interrogation should be a factual matter. It is, by its nature, a factual determination. Was the individual in custody? In this case, that's obviously not in dispute. Was there interrogation? That is a matter which the trial court can determine by viewing the witnesses. It's true that at the hearing, affidavits were submitted. The agent was available for testimony had there been a decision made to put him on the stand for cross-examination by the defense. That wasn't done. The agent simply said he picked up the defendant. He explained to him the procedures that were going to be followed, which is something a police officer and law enforcement officer typically is going to do when they take somebody into custody. And he said, and this is probably your last chance to help me out on what we've been talking about, which was to have him tell Agent Gariola whether or not he knew where Mr. Sines, Joe Louis Sines, could be located. Joe Louis Sines was the name under which the defendant was originally arrested in 1997. It was the name under which he was serving his sentence for his parole violation at the time he was taken into custody. There is no issue, never was an issue, as to whether or not the defendant in this case was a gang member. He had it written across his chest, and the proof of that was apparent, and it was irrelevant to Mr. Gariola's desire to try and find this Joe Louis Sines, whom the declaration in the case was wanted for, I think, a couple of murders and some other capital crimes. All he wanted and all he reasonably hoped to elicit by the inquiry was a response, yes, I'll help, or yes, maybe I can do something. The case law, the Sherwood case, for example, says that although it's not determinative, it is very relevant to consideration of these issues that the question or that the statement or that the functional communication between the two was directed at something other than the crime for which the defendant was charged. Agent Gariola was not making any inquiry and didn't expect to obtain any inquiry, any response, with respect to the underlying crime. He wanted to know if the defendant would cooperate in locating Joe Louis Sines. That was what his expectation was, and the fact that the statement was directed not at the crime of possessing a firearm on a street in the Hollenbeck division a year and a half before at a location in which Agent Gariola wasn't even present at the time, it was about Joe Louis Sines, and that's all he was interested in. The defendant's response was not anticipated, was not expected, and on his face, by himself in the abstract, it wasn't even incriminating. All he said was, I didn't do it. The LAPD planted the gun. Had he had a Miranda warning at that time? No, sir. He's in jail. He was picked up in prison. And no other officer had given him a Miranda warning for any purpose? No warning. And that's, of course, the reason that the officer asked no questions. All he did was make a statement to determine whether there was a willingness to cooperate as to a completely collateral matter. So why was the statement relevant at trial? It became relevant at trial fundamentally because not only, I mean, we knew in all of these cases it was a credibility issue. The officer says, I saw him throw the gun. The defendant says, no, it wasn't me, or it was already there, or it was somebody else, or the cops planted it. It's one variation on these stories. So we knew we had a credibility issue going in. Agent Gariola, months after the exchange with the defendant on the way to the MDC, went out and interviewed Mr. Villa, because we had reason to believe that Mr. Villa was going to be called as a witness at trial. And by serendipity came upon these letters, which Mr. Padilla had sent to Mr. Villa through an intermediary, essentially. And I have a disagreement with the counsel's characterization of those. They're pretty apparently an attempt to solicit perjury at trial. He is basically enlisting Villa, a junior gang member, to testify at trial. Now this is what Mr. Padilla had said he was going to do after he had a chance to think about things. He's picked up at the prison. He says, the cops planted it. I didn't do it. I don't need to cooperate. Then he's thinking about it. He sees what's going on in federal court. There's an order of attention. And then he blurts out, well, it doesn't matter, because I've got a guy who will come in and testify. Then after that, he begins writing these letters. So ultimately, the statement was incriminatory. It was. It was incriminatory in the sense that, yes, it affected his credibility. Sure. You wouldn't have used it if it didn't help your case. Absolutely. Yeah. I mean, we put it in because we believe, A, it didn't violate Miranda. B, we believe it assisted our case in proof. It helped to establish that the defendant was, in fact, soliciting defendant or via the witness, and that the reading of those letters, it confirmed our interpretation that we argued to the jury of those letters that Mr. Padilla was soliciting Mr. Padilla to lie. Very quickly, going through the expiry issues, the judge, first of all, in the Excerpt of Records, when the judge has the discussion, she very clearly weighs and is aware of the 403 considerations. Is there any objection made? Well, it's hard. I can't say there was no objection. Clearly, the defendant filed a motion to keep out the expert. After the discussion and the judge said, look, this looks just like Henke and Takahashi. I can lay them down side by side, and it all seems to fit. I find relevance, and I think implicit in that is a finding of reliability. We clearly don't have, and the Alec Torrey case discusses this, there's no formula that you have to go through, and the judge clearly had a detailed understanding of both the Henke and the Takahashi decisions, both of which discussed reliability, and the characteristics and facts of those cases and the testimony are virtually identical to here. She interviewed the witness at her choice out of the hearing of the court, came in, indicated to the court she had no objection to his qualifications, but she had an objection to his testimony. There was no actual explanation of what the basic grounds for that objection were. He testified. He was cross-examined extensively by the defendant, but there was no other objection on the record beyond that, Your Honor. I don't quite understand. She waived that he was an expert on gang activities. What other objection was made in the record? From that point, none. Why isn't it waived? I would argue that it should be. All she said was I object to his testimony. She said I have no objection to his qualifications. I object to his testimony. Or I maintain my objection to his testimony. What had earlier been grounds set out? I mean, there was originally a motion to exclude the. . . Based largely, and I can't recall specifically, but the issue was whether he was qualified to render it and whether it was admissible or whether the prejudice created by the testimony outweighed the probative value. Sure. I mean, there's a motion to eliminate. Yes, it's in there, right? Yeah. There is a motion to eliminate in the record. Raising the 403 grounds and 702, right? I beg your pardon? I mean, objecting on 403 grounds and 702. And there was also an objection that we hadn't provided notice under Rule 16, and our response to that, which the trial court accepted, was that this was a rebuttal witness and Rule 16, biased language, does not require it. But in our trial papers, I notified defense counsel in advance that if the gang issue came up and if they had testified, I intended to attempt to put a gang expert on the stand and have them testify about the code, which is the same issues that were brought up in Takahashi and also in Hankey. And I think with that, I've pretty well completed it, unless there are specific questions. Thank you for your argument. Thank you. Your Honor, the record clearly has a reliability objection, and it's quoted in my reply brief at page 8 and 9. The first sentence of what I quote says, quote, the proposed expert testimony also has reliability problems. The quote then goes on for several paragraphs to outline why we think there's reliability problems with the sort of methodology of this type of testimony and stuff. Those then got ignored by the district court in its ruling. It talked about 403. It talked about qualifications. It talked about relevance. It never talked about reliability. And so I think there was an objection, and it didn't get addressed, and that's what brings the Mukhtar case that I discussed into play. On the Miranda issue, there's a couple little factual nuances that Mr. Butker moved past a little bit. The agent did not say this is, quote, probably, unquote, your last chance to cooperate. He said this is your last chance to cooperate. This wasn't idle conversation with another officer like we had in Ennis and the Thurman case that the defendant happened over here. It wasn't just words normally attended to arrest and custody that an officer has to say, like telling the defendant what he's been arrested for or standard booking questions. It wasn't just explaining the defendant's situation to him so he could reflect on what to do. What the words last chance were meant to do was get a response right then before he talked to an attorney and before he could reflect on whether, how, and why to keep his mouth shut. And I think it was, you know, we can go back and forth. Frankly, as I've argued, what the agent expected and hoped to get, it wasn't just, yeah, I'll cooperate. It was in the cooperation about knowing where Joe Luis' sentence, et cetera, was. That, I would submit, is in itself somewhat incriminating. The bottom line is it doesn't matter. The government got a response and it used the response at trial. And under Ennis, that's what incriminating means. It's incriminating if the government uses it. The government used it here, and they used it in a very damning way, frankly. With respect to, in case there's any lack of clarity here, we are not conceding that the evidence was not newly discovered, the non-protunct order that is, or that there was a lack of due diligence. My point is that the evidence not only was newly discovered, but newly existed. And so by definition, it was also newly discovered. With respect to due diligence, my point is you can't use due diligence to find something that doesn't exist. And so it's due diligence to find it as soon as it does exist. There's no requirement of due diligence to create evidence. To the extent there's any doubt about that, please consider what was involved here because Mr. Padilla himself did make efforts, and I think efforts that he makes before he's even charged in the felon possession case aren't even necessary. And then when he had counsel, I would submit she made what are extraordinary efforts. If I could just go over those. In 1997, he told his county public defender while he was up there entering his plea, the county public defender said, never mind, don't bring it up. In 1999, he did bring it up, and it was addressed to some extent in state court and juvenile court jurisdiction was denied. No one told him, or at least there's nothing in the record to suggest he was told that he could file some fancy petition for writ of quorum nobis. With respect to counsel's efforts, Your Honor, I would submit that ordinary diligence does not require an appointed counsel in a federal criminal case to get what I would submit is a very creative and atypical diligence idea of taking the trouble to go to a completely different court in a completely different case in a jurisdiction where she's not even appointed to get the conviction vacated with a non-crotonic order. I would submit that even if there's some due diligence requirement that applies here to create evidence in addition to find it when it exists, that it's not due diligence to require an attorney to do that. That was beyond ordinary diligence, and the fact that she only did that when she saw from a pre-sentence report that there was a problem here is good enough. I've gone over my time. If the Court has questions, I'll open it. Thank you for your arguments. Thank you. The case, as heard, will be submitted. We'll proceed with the last case on the oral argument calendar for this morning, which is Norman v. Galazian. Isn't Norman v. Galazian two cases left now or more after this? Isn't it? Yeah. Oh, I'm sorry. Yeah, second to last. I'm sorry. Didn't want to make you nervous out there. My colleagues appropriately reminded. Well, we should hear the case. I skipped over it, and I apologize. A Frye v. Roe. I hope that's harmless error on my part.
judges: Wallace, Canby, Thomas